UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| RICKIE ARMSTRONG, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. )<br>_____ ) | Case No. 1:07-cv-1212<br><br>Honorable Janet T. Neff<br><br><br>**REPORT AND RECOMMENDATION** |

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). Plaintiff filed his DIB application on March 8, 2004, claiming a May 7, 2003 onset of disability. (A.R. 42-44). Plaintiff's claim was denied on initial review. (A.R. 24-28).

Plaintiff received a hearing before an administrative law judge (ALJ) on July 25, 2006 (A.R. 237-86), at which plaintiff was represented by Attorney Marsha Wood. Plaintiff testified that he had most recently used cocaine on June 9 or 10, 2006, which had resulted in a "dirty" urine drop, causing plaintiff to spend the weekend of June 30, 2006, in the Ingham County jail. (A.R. 263). He reported that he did not have a driver's license because he "caught a DWI" which "was pleaded down to impaired," and his license was suspended for three months. (A.R. 245). Plaintiff testified that he was not taking any prescription medication. (A.R. 266-67). When the ALJ questioned plaintiff regarding what mental impairments prevented him from working, plaintiff responded that he had problems with his anger and an obsessive-compulsive disorder (OCD). (A.R. 254). Plaintiff

then testified that he had been up since 5 a.m. that morning preparing for his 1:30 p.m. hearing, spending an hour in the shower, thirty minutes brushing his teeth, etc. (A.R. 254-56). Plaintiff's attorney questioned him about his having been a perfectionist at a former job as a janitor. (A.R. 268-69). When she asked plaintiff if he had been a "perfectionist" at other jobs, he responded, "Yeah, you know, its like this. It's just like the jobs and my little ritual in the bathroom, they go had in hand together unfortunately." (A.R. 269). On October 27, 2006, the ALJ issued a decision finding that plaintiff was not disabled because his alcohol and substance abuse were material to a finding of disability. (A.R. 11-22). Plaintiff does not have any exertional, postural, or other physical limitations. The Appeals Council denied review on October 5, 2007 (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision.

On December 3, 2007, plaintiff filed his complaint in this court seeking review of the Commissioner's decision denying his DIB claim. Plaintiff's brief contains the following statement of errors:

1. The ALJ's decision is "contrary to law" because the ALJ failed to adequately "develop the record."

2. The hypothetical question upon which the ALJ relied is flawed by not taking into account Mr. Armstrong's obsessive-compulsive disorder.

3. The ALJ failed to evaluate Mr. Armstrong's testimony about his OCD in accordance with the Commissioner's own standards.

4. Given the nature of bipolar disorder, it is not possible to separate mental limitations imposed by drug and alcohol addictions and mental limitations imposed by mental disorders.

(Plf Brief at 10-11, docket # 9). Upon review, I find that plaintiffs's arguments do not provide grounds for disturbing the Commissioner's decision. I recommend that the Commissioner's decision be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Jordan v. Commissioner*, 548 F.3d 417, 422 (6th Cir. 2008); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact

in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Proposed Findings of Fact**

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act on May 7, 2003, and continued to meet those requirements through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. The ALJ found that plaintiff had the following severe impairments: "bi-polar disorder; personality disorder; and a history of alcohol/substance abuse dependence (20 CFR 404.1520c)." (A.R. 14). The ALJ's opinion accurately summarized plaintiff's history of medical treatment, and that summary (A.R. 14-18), is incorporated herein by reference. The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 16). The ALJ accepted plaintiff's testimony regarding the functional limitations that his drug and alcohol abuse placed on his ability to maintain employment:

> The undersigned has considered whether the claimant's medically determinable impairments could reasonably be expected to cause disabling symptomology and concluded that they could. After careful consideration of the entire record, the undersigned finds that the claimant's testimony with respect to the extent and severity of his impairments and resulting functional limitations, including the limiting effects of his alcohol and substance abuse is credible when considering there [sic] affect [sic] on his ability to work on a regular sustained basis. As noted previously, the claimant has reported that he was able to maintain a job for over ten years, but was fired due to alcohol and substance abuse. It is further noted that the effects of alcohol and substance abuse caused the claimant to have difficulty maintaining focus and concentration and staying on task for even simple unskilled work.

(A.R. 17). The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorder(s), the claimant has the residual functional capacity to perform simple, unskilled work with an SVP rating of 1 or 2 that involves only one, two, or three-step instructions; work that requires only minimal contact with co-workers; work that involves minimal contact with, and minimal direction from a supervisor; work requiring only brief and superficial contact with the public; routine work that does not require frequent significant changes or adaptations; work that does not require taking initiative or making independent decisions; and work that does not involve meeting production quotas or goals or keeping pace with co-workers. The claimant has no exertional, postural, or other physical limitations, but due to the effects of substance and alcohol abuse he would require jobs that will allow employees to miss work, be late, or leave work early three times a month or more and would have difficulty maintaining focus and concentration and staying on task for even simple unskilled work.

(A.R. 16). The ALJ found that plaintiff could not perform his past relevant work. (A.R. 18). Plaintiff was forty-three years old as of the date of his alleged onset of disability and forty-five years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual. (A.R. 18). Plaintiff has at least a high school education and is able to communicate in English. (A.R. 18). The ALJ found that the transferability of work skills was not an issue because plaintiff's RFC limited him to unskilled work. The ALJ found that considering the claimant's age, education, work experience and RFC, including his substance use disorders, there were no jobs that exist in significant numbers in the national economy that the claimant would be capable of performing.

Where there is evidence of drug or alcohol addiction, the ALJ must determine whether it is a "contributing factor" material to the determination of disability. 20 C.F.R. § 404.1535(a). The ALJ found that plaintiff's substance abuse was indeed material to a finding of disability. (A.R. 18-22). He found that if plaintiff stopped his substance abuse, plaintiff would continue to have severe impairments but would not be disabled. He would not have an impairment or combination of impairments that would meet or medically equal a listed impairment. He would

have the RFC "to perform simple, unskilled work within SVP rating of 1 or 2 that involved only one, two, or three-step instructions; work that requires only minimal contact with co-workers; work that involves minimal contact with, and minimal direction from a supervisor; work requiring only brief and superficial contact with the public; routine work that does not require frequent significant changes or adaptations; work that does not require taking initiative or making independent decisions; and work that does not involve meeting production quotas or goals or keeping pace with co-workers." (A.R. 19). The claimant had no exertional, postural or other physical limitations. (A.R. 19). The ALJ found that plaintiff's testimony regarding other subjective limitations was not fully credible:

> In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p and 96-6p.
>
> As mentioned above, the claimant reported that he was able to maintain a job for over ten years until he was fired due to alcohol and substance abuse. He also reported that he had been fired from other jobs due to alcohol and substance abuse. In addition, the claimant testified that he had no physical impairments and, while he reported that he had not used alcohol or drugs since June 2006, he reported that he continued to treat regularly with his counselors at CMH and attend 12-step meetings. The claimant reported that he had problems with supervisors and co-workers in the past. However, he also reported that his medications had been helpful in the past until he quit using them when he thought he was well. The claimant reported he was trying to get back on his medications.
>
> If the claimant stopped the substance use, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(A.R. 19-20).[1]  The ALJ found that plaintiff would be unable to perform his past relevant work.  The ALJ then turned to the testimony of a vocational expert, who testified that there were approximately 33,000 jobs in the State of Michigan that a hypothetical person of plaintiff's age, with his education, work experience and RFC would be capable of performing, laying aside the impairments attributable to drug abuse. (A.R. 276-78).  The ALJ found that this constituted a substantial number of jobs.  The ALJ held that plaintiff was not disabled because his drug and alcohol abuse were material to a finding of disability.

**Discussion**

**1.**

Plaintiff argues that the ALJ's decision is "contrary to law" because the ALJ failed to adequately develop the record, in the following ways:  (1) because there were "inconsistencies between Dr. Ostein's report of Mr. Armstrong's having lost many jobs because of his drug and alcohol problems (Tr. 211) and Mr. Armstrong's testimony"; and (2) because "the ALJ never questioned Mr. Armstrong about the reason for termination of other jobs such as janitorial, cashier, plasma technician, dish washer, or general laborer." (Plf. Brief at 10, docket # 9).  The argument that the ALJ failed to adequately develop the record is patently meritless.  Plaintiff was represented in both the administrative hearing and this lawsuit by Attorney Marsha Wood.  Attorney Wood had more than an adequate opportunity at the July 25, 2006 hearing to question her client regarding his various employment terminations and to explore any "inconsistencies" she perceived between Dr.

---

[1]The ALJ reviewed the medical evidence regarding plaintiff's mental impairments and concluded that alcohol/substance abuse was a major contributing factor to plaintiff's limitations. (A.R. 20).

Ostein's report and plaintiff's testimony. It was plaintiff's burden to produce evidence in support of his disability claim, not the ALJ's burden. *See Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008) ("[T]he claimant bears the ultimate burden of proving disability."); *see also Struthers v. Commissioner*, No. 98-1528, 1999 WL 357818, at * 2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."). The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because plaintiff was represented by an attorney at the hearing. *See Wilson v. Commissioner*, 280 F. App'x at 459; *Trandafir v. Commissioner*, 58 F. App'x 113, 115 (6th Cir. 2003); *see also Kelley v. Commissioner*, No. 07-5879, 2009 WL 233266, at * 5 n. 1 (6th Cir. Feb. 2, 2009).

**2.**

The Social Security Act, as amended by PUB. L. No. 104-121, 110 STAT. 847, 852-55 (1996) precludes awards of DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. It was plaintiff's burden to demonstrate that his drug and alcohol abuse was not material to a finding of disability. *See Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Vester v. Barnhart*, 416 F.3d 886, 888 (8th Cir. 2005); *Doughty v. Apfel*, 245 F.3d 1274, 1276 (11th Cir. 2001); *Brown v. Apfel*, 198 F.3d 492, 498 (5th Cir. 1999). The ALJ found that plaintiff's drug and alcohol abuse was material to a finding of disability. Plaintiff disagrees with the ALJ's finding. The administrative record documents plaintiff's longstanding problems of drug and alcohol abuse. There is more than substantial evidence supporting the ALJ's finding.

Plaintiff claimed a May 7, 2003 onset of disability. On June 26, 2003, plaintiff sought an evaluation at Central Diagnostic and Referral Services, Inc. in Lansing, Michigan. Plaintiff stated that he was seeking assistance because his drug and alcohol addiction was "getting out of hand." (A.R. 126). He related a lengthy history of drug and alcohol abuse, stating that he had been "treated for alcohol abuse eight times and for drug abuse on eight occasions." (A.R. 128). Plaintiff reported that within the thirty day period before this evaluation he spent "$85 on alcohol and $350 on drugs." (A.R. 128). He gave the following account of his then recent drug and alcohol abuses:

> Client drank 288 oz. of beer, smoked an 8 ball of crack and 1/4 oz. of marijuana, and took 3 Valium, nonprescribed in the last 48 hours. Client drank 144 oz., smoked 1/16 of crack and 3-4 blunts of marijuana daily in the last 30 days. Client took 1-2 Valium, nonprescribed, per day on 10 days out of the last 30 days. Client took 1 Vicodin or 1 Tylenol 4 per day, nonprescribed, on 13 out of the last 30 days. Client's use of marijuana, alcohol, and cocaine is client's peak period of use in his life. Client has had several blackouts from drinking and drug use (most recently on 6-22-03).

(A.R. 128).

On December 8, 2003, plaintiff returned to Central Diagnostic and Referral Services. He stated that he had been charged with second degree retail fraud in November 2003 and that his pretrial hearing was set for December 11, 2003. (A.R. 132). The December 2003 report reflected plaintiff's continued substance abuses:

> Alcohol 30 of the past 30 days consuming up to 24 per use. Last use: 12/7/03
> Opiates 16 of the past 30 days consuming up to 2 Vicodin 3-4 times per week. Last use: 12/6/03
> Cocaine/crack 30 of the past 30 days consuming up to an 8 ball per use. Last use: 12/8/03
> Cannabis 14 of the past 30 3-4 times per week. Last use: 12/7/03
> Sedatives 8 of the past 30 days consuming up to 2 Valium 2-3 times per week. Last use: 12/4/03

(A.R. 132).

On January 10, 2004, plaintiff reported that every day he used two or three grams of cocaine and drank "12 pkg. beer-pint of liquor." (A.R. 173). He stated that he was smoking "3 to 4 joints" every other day. (*Id.*).

On January 13, 2004, plaintiff was examined by a psychologist. His diagnostic impression of plaintiff's condition was "alcohol, crack and pot dependencies." (A.R. 160). Plaintiff described himself as a "lyer [sic], thief, cheat, [and a] hustler." (A.R. 166).

On April 13, 2004, plaintiff reported to Marnee Rutlidge, B.S., a substance abuse specialist and Michigan Rehabilitation Services case manager, that he was on probation from the 56-A District Court (Eaton County) from April 1, 2004 through December 1, 2004, following a second-degree retail fraud conviction. The terms of plaintiff's probation included that he not use or possess alcohol or illegal drugs, and plaintiff was subject to periodic drug testing. (A.R. 214). Plaintiff reported that he had appeared in Ingham County Circuit Court on April 12, 2004 on retail fraud charges and that his sentencing was scheduled for April 21, 2004. (A.R. 214).

On April 27, 2004, J. Keith Ostein, Ph. D., performed a consultative psychological evaluation. (A.R. 182-85). Plaintiff stated that he was "drinking a lot by the time he was age 10" and when he was seventeen he "started using marijuana and then got into speed, crack, acid, and cocaine." (A.R. 182). Plaintiff had been involved in multiple substance abuse programs throughout his entire adult life.

> Rickie reported that he has spent about a total of two years in jail for such things as open alcohol, retail fraud, and unpaid tickets. He also reported that he spent nine months in a "prison camp." He was last released from jail in November 2003. He stated that he has pending charges for retail fraud. Rickie indicated that he currently is on probation and does weekly urine drops and breathalyser tests.

(A.R. 183). Plaintiff reported to Dr. Ostein that he was fired from his job at Fisher Body that he had held for a decade (1979 to 1989) because of his drug and alcohol abuse. He advised Dr. Ostein that his last employment had been at Sparrow Hospital from October 2002 to May 2003. "He was also fired from that job because of his continuing drug and alcohol problems." (A.R. 183). Plaintiff indicated that he was under the care of Jimmy Harris, M.D., a psychiatrist. Plaintiff stated that he was not taking any psychotropic medications. (A.R. 182). Dr. Ostein's primary diagnosis of plaintiff's condition was chronic and severe polysubstance dependence:

> Axis I: Polysubstance Dependence, Chronic and Severe, 304.80
> (Principle Diagnosis)
> Alcohol Dependence, Chronic and Severe, 303.90
> Bipolar Disorder, Mixed 296.63
>
> Axis II: Personality Disorder, With Narcissistic and Antisocial Features. 301.9
>
> Axis III: Rickie reported that he is generally healthy except for allergies.
>
> Axis IV: Rickie exhibited moderately severe psychosocial stressors associated with severe financial problems, severe limitations in his primary support system, a history of chronic, severe drug and alcohol dependence, psychological disturbance, functional limitations, and vocational limitations.
>
> Axis V: Current GAF: 51.

(A.R. 184).

On May 21, 2004, Dr. Ostein supplied additional information in response to a telephone call from Michigan Rehabilitation Services. Dr. Ostein wrote that plaintiff "had been fired from many jobs because of his drug and alcohol problems. He had 10 years of employment with Fisher Body, but lost that job in 1989 as a result of his substance abuse problems. Since that time he has been unable to maintain himself in stable employment. Additionally, he has spent time in jail

on various offenses, the most recent occurring in November 2003. He indicated that he currently has other charges pending." (A.R. 211).

In May of 2004, Psychologist Linda Brundage reviewed plaintiff's records. She agreed with Dr. Ostein's primary diagnosis of plaintiff's condition as polysubstance abuse, chronic and severe, followed by chronic and severe alcohol dependence. (A.R. 187-205).

Plaintiff received treatment from M. Poff, D.O. at Community Mental Health. On July 16, 2004, Dr. Poff discontinued a prescription for Celexa and started plaintiff on Seroquel. (A.R. 222). On July 23, 2004, Dr. Poff reported that plaintiff was doing well. He offered a diagnosis of OCD. Dr. Poff did not make a diagnosis of bipolar disorder, but indicated that it should be ruled out. He mentioned plaintiff's history of "ETOH" dependence, but did not reference plaintiff's history of substance abuse. He gave plaintiff a global assessment of functioning (GAF) score of 65-70. (A.R. 226). On November 5, 2004, plaintiff admitted that he had discontinued his medications and felt worse. (A.R. 231). On December 16, 2004, plaintiff reported that he had completed his probation and was looking forward to going to New York. (A.R. 233).

On November 30, 2005, Michigan Rehabilitation Services sent a letter in response to Attorney Wood's letter inquiring about plaintiff's case. Rehabilitation Services worked with plaintiff for approximately one year, April of 2004 through April of 2005. Plaintiff's case was closed in April of 2005 when Rehabilitation Services was unable to contact plaintiff. Plaintiff had moved to New York with his wife. (A.R. 209-10).

On the whole, the administrative record provides overwhelming evidence supporting the ALJ's decision finding that plaintiff's drug and alcohol abuse were material to a finding of disability.

**3.**

Plaintiff disagrees with the ALJ's credibility determination. He argues that the ALJ failed to evaluate his "testimony about his [obsessive-compulsive disorder] OCD in accordance with the Commissioner's own standards." (Plf. Brief at 11). Plaintiff's argument is set forth verbatim, and in its entirety, below:

> If the ALJ did not find Mr. Armstrong's testimony about his OCD symptoms credible, he was obligated to evaluate Mr. Armstrong's credibility according to the criteria in SSR 96-7p. That SSR lists seven factors that the ALJ must consider in evaluating credibility.

(Plf. Brief at 11). I find that this argument is meritless. The ALJ expressly applied SSR 96-7p in the process of determining that plaintiff's testimony attributing his various "perfectionist" behaviors his to OCD was not fully credible. (A.R. 19-20).

This court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *see also Lawson v. Commissioner*, 192 F. App'x 521, 528 (6th Cir. 2006). The court cannot substitute its own credibility determination for the ALJ's. The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."

*Jones*, 336 F.3d at 476; *see Cruse v. Commissioner*, 502 F.3d 532, 542 (6th Cir. 2007); *see also Hash v. Commissioner*, No. 08-5654, 2009 WL 323101, at * 8-9 (6th Cir. Feb. 10, 2009). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d at 773. "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Secretary of Health & Human Servs.*, 987 F.2d at 1234. The ALJ's provided a detailed and lengthy discussion of his reasons for finding that plaintiff's subjective complaints were not fully credible. I find that the ALJ's credibility determination is supported by more than substantial evidence.

**4.**

Plaintiff argues that the hypothetical question upon which the ALJ relied "is flawed by not taking into account Mr. Armstrong's obsessive-compulsive disorder." (Plf. Brief at 10). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Anthony v. Astrue*, 266 F. App'x 451, 461 (6th Cir. 2008); *Myatt v. Commissioner*, 251 F. App'x 332, 336 (6th Cir. 2007). Here, the ALJ found that plaintiff's subjective complaints which he attributes to his OCD were not fully credible. The ALJ was not bound in any way by a VE's response to a hypothetical question incorporating a contrary assumption. I find no error.

**5.**

Plaintiff argues that, "Given the nature of bipolar disorder, it is not possible to separate mental limitations imposed by drug and alcohol addictions and mental limitations imposed by mental disorders." (Plf. Brief at 11). "[S]ubstance abuse is a co-existing disorder with [plaintiff's] other mental impairments; one that cannot be separated from the bipolar disorder." (Reply Brief at 1). For approximately thirteen years, the Social Security Act and federal regulations have *required* that an ALJ determine whether a claimant would still be disabled if the claimant were not a substance abuser. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. The federal courts have never held that it is "impossible" to separate a claimant's functional limitations stemming from substance abuse and functional limitations caused by other mental impairments. Plaintiff's argument, therefore, is with Congress, not the ALJ.

It was plaintiff's burden to present evidence establishing that his drug and alcohol abuse was not material to a finding of disability. *See Parra v. Astrue*, 481 F.3d at 748; *Vester v. Barnhart*, 416 F.3d at 888. His reliance on *Kangail v. Barnhart*, 454 F.3d 627 (7th Cir. 2006) is misplaced because the record before the Seventh Circuit in *Kangail* was far different than the record here. In *Kangail*, Tina Kangail had carried a diagnosis of bi-polar disorder for more than a decade. *Id.* at 628. She had supported her disability claim with medical testimony establishing that she tended to abuse drugs and alcohol during her monthly manic phases. *Id.* at 629. The ALJ improperly "rejected abundant medical testimony without giving adequate reasons for doing so." *Id.* The ALJ in *Kangail* "went so far as to attribute the claimant's bipolar disorder to substance abuse." *Id.* Here, by contrast, there was little evidence of significant functional limitations attributable to anything other than plaintiff's persistent drug and alcohol abuse. Plaintiff's level of

drug and alcohol abuse was astonishing.  Plaintiff faced an uphill battle in attempting to convince an ALJ that his substance abuse was not material to a finding of disability when only a month before the administrative hearing plaintiff was sent to jail because his urine test revealed continued cocaine abuse. (A.R. 263).  Plaintiff was not successful in carrying his burden.  I find no basis for disturbing the Commissioner's decision.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated:  February 24, 2009            /s/  Joseph G. Scoville
                                     United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).